## Case No. 11,901.

### ROBERTS v. ELDRIDGE.

[1 Spr. 54.] [1]

District Court, D. Massachusetts. Aug., 1843.

SEAMEN—MUTINY—DEADLY WEAPON—ACTION FOR INJURY BY MUTINEER.

The master of a vessel may use a deadly weapon, when necessary in order to suppress a mutiny. A mutineer, although severely injured thereby, can maintain no action for damages.

This was a libel in personam, by a seaman against the master, to recover damages for a tort.

T. Coffin, for libellant.

E. Bassett, for respondent.

SPRAGUE, District Judge. The libellant was a seaman on board the whaleship Uncas, of which the respondent was master. On the 10th of November, 1841, while at sea, the respondent inflicted upon the libellant a very severe and dangerous wound, on the back, with a deadly weapon. called a whale spade, and a slight wound on the arm, by reason of which the libellant was confined several weeks to the cabin, and was, for a still longer term, unable to perform ship's duty. In defence it is contended that there was a conspiracy between the libellant and others of the crew, to overthrow the authority of the master; and that they were carrying it out by actual mutiny.

That there was a combination to prevent

---

[1] [Reported by F. E. Parker. Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]

the infliction of punishment, and to resist requisitions to labor, is fully proved. It is contended that this conspiracy was only to prevent undeserved punishment and unnecessary labor. If so, still, it was to transfer the right of judging of such desert and necessity from the master to the seamen, to overthrow his authority, and set up that of the foremast hands in its stead.

Insubordination and resistance to authority ensued. On the morning of the 9th of February, 1841, all hands being called, and some of them not coming out of the forecastle, the mate went forward twice. The second time, Davis, one of the crew, being still in the forecastle, the mate asked him why he did not come up. He was then dressed and ready, but instead of going on deck, he took off the belt which contained his sheath-knife. threw it down, and then took it up and buckled it on again. As he came on deck, the mate gave him a shove, or as some of the libellant's witnesses say, a blow with his arm across the neck, and went aft. Davis took up a hatchet and uttered some threat against the mate, who, being informed of it, took up a brick and went forward toward Davis, who raised the hatchet as if to strike the mate. The libellant took the hatchet away from Davis, but refused, as the second mate testifies, to deliver it to that officer, who wrested it from him. The mate attempted to take Davis aft, but was resisted, not only by Davis but by others of the crew, and particularly by Tobias and Watson, who rescued him and prevented his being taken aft. The captain being informed thereof by the mate, afterwards called all hands aft and talked to them. M'Kenzie, a witness for the libellant, says he got his book, and read to them about mutiny, and dismissed them. Tobias then said aloud, "He guessed there would be no flogging there while he was on board." The next day, Watson, being at the wheel, the captain had some conversation with him. From Watson's own testimony, he was disrespectful toward the captain; and he afterwards told Guynon, another witness for the libellant, that the captain was talking to him about the crew having agreed that no man should be flogged. The captain ordered the mate to put Watson into the rigging, and called another man to relieve the wheel. As to what followed, there is a painful conflict of testimony. There is no doubt that soon after the wheel was relieved, Watson went hastily forward, without permission; that the captain seized a whale spade and pursued him, and wounded several of the crew, and among them Tobias and the libellant, the latter to a frightful extent. There is no doubt, also, that after the order was given to put Watson in the rigging, and before the captain went forward with the spade, Tobias, Snow. George Davis and James Smith. came up out of the forecastle, and that about the time that Watson ran for-

ward, the libellant and a large number of others of the crew who were at the main hatches, ran forward, and that Tobias threw a brick at the captain, which hit him in the forehead, and for an instant stunned him; but whether this was before or after Tobias was wounded, is a matter of controversy. As to the part which the libellant took in the affair, the testimony of those who were eye witnesses of the whole transaction is extremely inconsistent and contradictory, and if the evidence stopped there, I should be in great doubt as to the participation of the libellant in what took place before, and at the time, the wound was received. But there is other important evidence of declarations and admissions made by three of the conspirators, and by the libellant himself. These declarations, and especially those by the libellant, were so full and explicit, and made to so many persons on different occasions, that they satisfactorily show not only that the libellant was one of those who conspired to overthrow the authority of the master, but also that he actively participated in the attempt to accomplish the object of the conspiracy by force. To this may be added the previous conduct and character of the parties. It is in testimony that the libellant had, on other occasions, been guilty of threatening language and mutinous behavior, while not one of the witnesses has stated that there was any complaint, or ground of complaint, against the captain, or any of the officers. That the master should, on this 10th of November, have seized this deadly weapon, and rushing forward, cut at several of his men and wounded four of them, when, according to the testimony of the libellant's witnesses, they had no arms or weapons, and were neither resisting his authority, nor committing any offence, is inconsistent with all his other conduct, so far as it has been exhibited to the court, during this three years' voyage. It is an anomaly of which no solution is given. But if in accordance with the testimony of the witnesses for the respondent, and the declarations of three of the seamen, and of the libellant himself, the conspiracy was carried into actual mutiny, and the men were arming themselves in combined resistance, and an actual assault by one of them was made on the captain, then are his acts on this occasion satisfactorily accounted for. And to this result my mind has been brought by a careful consideration of the evidence. Had the mutineers been successful, they would have found themselves in possession of all power, and at the same time covered with a crime subjecting them to severe punishment, should they return to their own country. That the result would have been the destruction of the officers, and the loss of the ship, can hardly be doubted. I am constrained, therefore, to say, that the conduct of the master was justified by necessity created by the criminal misconduct of the libellant and his associates.

Libel dismissed.

See U. S. v. Lunt [Case No. 15,643]; U. S. v. Colby [Id. 14,830]; and U. S. v. Borden [Id. 14,625].